MAYBELLE LANCASTER *vs.* J. BREWER MARSHALL, *Ex.*

NOVEMBER 22, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. In this action of assumpsit the plaintiff seeks to recover the balance of $261.50 which she claims is due her on a contract of employment with Caroline F. Aldrich, a resident of Lincoln, who died April 10, 1940, leaving a will which was probated in that town. The defendant, the decedent's doctor in her last illness, is the executor of her will and also residuary legatee thereunder. A jury returned a verdict for the plaintiff in the full amount and this verdict was approved by the trial justice after a hear-

ing on defendant's motion for a new trial. The case is before us on defendant's exception to the denial of his motion for a new trial; to the denial of his motion for a directed verdict; and on certain other exceptions taken by him during the trial.

The plaintiff's claim, which she duly filed on January 22, 1942 in the probate court of the town of Lincoln and which was thereafter disallowed by the executor, sets forth that the claim is based on a contract in writing, dated September 24, 1939, between her and the deceased, Caroline F. Aldrich, "for the period of one year's service as nurse, housekeeper and attendant of said Caroline F. Aldrich", at $15 a week, and that there was then due her from the estate of the deceased, under that contract, payment for seventeen weeks and three days, or $261.50.

The plaintiff, through no fault of hers, was unable to produce the writing upon which she relies in this case. While testifying in the superior court in the case of *Albert P. Holley* v. *J. Brewer Marshall,* P. A. No. 1877, in which the will of Caroline F. Aldrich was contested and allowed, she gave the writing in dispute here to the attorney for the executor, said executor being the defendant in the instant case, for the purpose of introducing it as an exhibit in that case, which was accordingly done. Upon the final termination of the Holley case, the executor's attorney withdrew the original will and all his exhibits, including the writing belonging to the present plaintiff, "for delivery to Probate Court of Lincoln." Apparently diligent search of court and private papers by the parties to the case at bar has failed to find that writing. The case therefore was tried in the superior court on secondary evidence.

It appears in evidence that the plaintiff and her family lived about half a mile away from Caroline F. Aldrich, who lived alone in a large house in a sparsely settled section of the town of Lincoln. In September 1939 Caroline, who was then over eighty years old, was under the professional care of the defendant. At her request he spoke with the plaintiff

several times in that month seeking to have her go and live with Caroline at $5 a week. Although the plaintiff liked Caroline, she told the defendant that she could not leave her home unattended to stay with Caroline unless she was paid $15 a week and was further protected against cessation of employment by Caroline for one year, as her husband would probably have to leave his work to take care of her own household. The result of these conversations was that the defendant suggested that she go, and the plaintiff agreed to go, with him and talk the matter over with Caroline personally.

On September 24, 1939 the defendant called for the plaintiff and brought her to Caroline's home, where the writing in dispute was prepared by the defendant, signed by Caroline, witnessed by him and delivered to the plaintiff. The plaintiff testified that at this meeting and in the presence of the defendant she told Caroline, as she had previously stated to the defendant, that, if she went to live with Caroline, her husband probably would have to leave his work to attend to the affairs of her own household, and that she could not afford to take such a chance unless she was to receive $15 weekly and was protected for one year against cessation of employment by Caroline. When Caroline agreed to these terms, the above-mentioned writing was executed. This testimony is substantially undisputed.

The plaintiff and the defendant now disagree as to the wording of that missing writing. The plaintiff testified that it read: "I promise to pay Maybelle Lancaster $15 a week for one year." The defendant, on the other hand, testified that it read: "I agree to pay Maybelle Lancaster $15 a week to take care of me for one year." He further testified that at the time "There was no question of Miss Aldrich dying. . . . She wasn't in the prime of life but she wasn't sick; no question of Miss Aldrich's dying at all."

The plaintiff lived with Caroline from September 24, 1939 to April 10, 1940, when the latter died. The following testimony by the plaintiff appears in the transcript: "Q. And

were you paid by Miss Aldrich up to the time of her death? A. Oh, yes. I was paid from—even when she was taken ill she would pay me in advance to be sure I would have it and she would always say, 'Remember, Maybelle, whether I live or not you will get your money just the same.' Q. And what money did she refer to? A. The wages." The evidence further shows that, from the time of Caroline's death on April 10, 1940 to May 18, 1940, the attorney for the executor, this defendant, paid the plaintiff $15 as wages and an additional $2.50 a week for food, for which she did not have to pay while Caroline was alive. The plaintiff testified that about June 6 she telephoned the attorney and inquired if her wages were ready for her at his office and that his reply was: " . . . you upset the court down there the other day and I don't see how I am going to pay you anything." The attorney to whom this remark was attributed did not testify. In this case the plaintiff seeks to recover wages allegedly due her from May 18 to September 24, 1940, under her agreement with Caroline.

Defendant's exceptions one and two are to the admission of questions which were addressed to the deputy town clerk of Lincoln, who was testifying from the probate record of the estate of Caroline F. Aldrich, and the answers to which disclosed that the defendant was the residuary beneficiary under her will. The defendant contends that this evidence was not material and tended to prejudice his case. In our judgment, it was proper for the plaintiff to show the defendant's personal interest in Caroline's estate, which, when considered in connection with all the other evidence in the case, might affect the weight to be given to his testimony. See *Ash* v. *Isaacson*, 59 R. I. 407, 415. These exceptions are overruled.

Defendant's sixth exception is to admission of a certain paper written by the plaintiff and allegedly signed by the deceased, which reads as follows: "Please make Mabels payment up until Sept. Caroline F. Aldrich." Referring to this writing, the plaintiff testified that, on April 6, 1940, Caroline,

who was then very ill, said to her: "Maybelle you go get a paper and I want you to write something down for me. . . . You write what I say", which, according to the plaintiff, was the above-quoted statement. Caroline then "signed her name to it" and gave it to the plaintiff, saying "you show that to Dr. Marshall now." The plaintiff further testified that the conversation which led Caroline voluntarily to dictate and sign the statement related to her wages, and that when she showed the statement to Dr. Marshall, he told her to "Take care of it." The defendant denied ever seeing this writing before it was shown to him in court, and he also testified that although the signature "might be" that of Caroline F. Aldrich, it did not look to him like her signature.

The defendant contends that it was prejudicial error to admit this writing in evidence, first, because of insufficient identification of Caroline's signature, as the plaintiff failed to testify that she was acquainted with her signature; and secondly, because the writing had no relevancy to the contract upon which the plaintiff was suing. Since the plaintiff had positively testified that Caroline signed the writing in her presence and that the statement therein contained referred to her wages, these contentions are clearly untenable. Exception overruled.

Doubt having been cast by the defendant upon the authenticity of Caroline's signature to the writing just considered, the plaintiff, in rebuttal and over defendant's objection, was allowed to put in evidence, for comparison of signatures, a paper containing two short statements, each dated September 24, 1939 and each admittedly written and signed by Caroline. The two statements are as follows: (1) "I want Mabel Lancaster to take my bag with my jewelry in and I want her to have all my jewelry except my gold beads and to give them to Candace Tucker;" (2) "I also want her to take charge of my bag with my money and bank books and papers, I have here in the house."

Under his seventh exception the defendant contends that, although it might have been proper to allow in evidence the

signatures on this paper, the trial justice erred in refusing to cut off the statements above those signatures, as he requested him to do, since the statements had no bearing on the matter in controversy. It is true, as the defendant argues, that the statements are unrelated to the determinative question at issue and that it might have been better if they had been covered in some practical manner without mutilating the paper by cutting it, as the defendant requested; yet we fail to see how those statements could have prejudiced him in any way. The exception is overruled.

Defendant's ninth and tenth exceptions erroneously purport to be exceptions to denials of different motions for a directed verdict. In reality, they relate to the different reasons advanced by him in support of his one motion for a direction of verdict, and as such should not have been set out as different exceptions in his bill of exceptions. Accordingly, these two alleged exceptions will be treated by us as different grounds under his one exception to the denial of his motion for a directed verdict.

The first ground is that of a fatal variance between the claim which the plaintiff filed in the probate court and the contract alleged in her declaration in this case. The claim which the plaintiff filed in the probate court sets forth that her claim was based on a contract in writing with Caroline F. Aldrich, dated September 24, 1939, for services for one year at $15 a week. The declaration in this case alleges that defendant's testatrix promised to pay to the plaintiff the sum of $15 a week for the period of one year by her promissory note of September 24, 1939. The defendant argues that this variance is fatal to her right to recover in this case. We cannot agree with this contention.

General laws 1938, chapter 578, § 3, simply provides that claimants "against the estate of a deceased person shall file statements of their claims in the office of the clerk of the probate court." The statute prescribes no particular language or form in which the claim shall be presented. If the claim, as filed, though lacking in technical exactness of

statement, fairly and substantially informs an executor or administrator of the nature and extent of the claim, there is a sufficient compliance with the statute. While a claimant cannot recover more than he has claimed or for a claim of a different character from the claim as filed in the probate court, he is not required to reveal in his statement of claim the nature of the evidence upon which he may attempt to support his claim in case of a contest. See *White* v. *Almy*, 34 R. I. 29, 35, 36.

In the instant case, the claim which the plaintiff filed in the probate court is based on a specific contract therein fairly identified and the action in assumpsit now before us is based essentially on that same contract. The claim as filed is equally consistent with a recovery upon a contract express both as to the obligation to pay and as to the precise amount to be paid, or upon a note in the technical sense of that term. There is no merit to the defendant's contention of a fatal variance.

The second ground of defendant's motion for a directed verdict is that the contract in question was one for personal service to Caroline F. Aldrich and that her death terminated that contract. We agree with the well-established rule which the defendant invokes in this case, namely, that in contracts in which performance depends upon the continued existence of a certain person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance. *Yerrington* v. *Greene,* 7 R. I. 589.

But that rule does not apply in the instant case because the evidence was conflicting and different conclusions therefrom, as to the nature of the contract, would have been reasonable. Even if it be granted that the jury could reasonably have found that the contract was as contended for by the defendant, it was also reasonable for the jury to find as contended for by the plaintiff, that is, that she agreed to give up the care of her own home in order to live with Caroline F. Aldrich, on the latter's express promise that she was to re-

ceive $15 a week for a period of one year, whether Caroline lived or not for that entire period, such condition being insisted upon by her as a protection in case her husband should have to give up his employment in order to attend to her household affairs while she was away. In these circumstances the trial justice properly denied defendant's motion for a directed verdict. This exception is accordingly overruled.

Defendant's eleventh exception relates to the denial of his motion for a new trial. After a careful consideration of the conflicting evidence in the case we cannot say that the jury were not warranted in finding for the plaintiff. The record shows that the trial justice fairly considered the evidence and approved the verdict in accordance with our well-established rules governing his consideration of a motion for a new trial. On the question of credibility, he says that "the Court was impressed with the character of this plaintiff. She struck the Court like a wholesome, truthful country woman who regarded Miss Aldrich as a friend, and who was willing to assist her as a friend as far as she could without injury to her own household." He further says that "if the case had been submitted to the Court without a jury the Court would have made precisely the same finding." In the face of this emphatic approval of the verdict by the trial justice, who had the opportunity of observing the plaintiff and defendant while they were testifying, which we have not had, we find no cause to disturb his ruling denying defendant's motion for a new trial. This exception is overruled. Exceptions not briefed or argued are deemed to be waived.

All of defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*Charles R. Easton,* for plaintiff.

*Henry E. Crowe, Thomas Hetherington,* for defendant.