240 A.2d 155.

GEORGE HETLAND *vs.* JOHN F. CAPALDI, *Director of Public Works.*

MARCH 28, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This petition for the assessment of damages provided for in G. L. 1956, §37-6-18, was brought to recover damages for the taking of a portion of the petitioner's land for highway purposes. The petition was heard by a justice of the superior court sitting without a jury, who

gave decision, and entered a judgment, for the petitioner in the amount of $1,384.96 plus interest and costs. The director of public works for the state of Rhode Island, hereinafter referred to as the respondent, now prosecutes an appeal from that judgment to this court.

It appears that petitioner was the owner of a lot of land located on the westerly side of Point Road, so called, in the town of Portsmouth. Point Road, conceded to have been a dead-end private way, extended northerly from Route 138 in that town along a small peninsula that extended northward into the Sakonnet River. It is not disputed that the state, in connection with the erection of a bridge between the northerly end of the peninsula and other land lying near Island Park, took by eminent domain the private way and a narrow strip of land on each side of said private way.

The petitioner's lot was bounded on the east by the westerly side of the private way, and included in the land taken by respondent for highway purposes was a strip of petitioner's lot about 5 feet wide that had abutted on the private way. It was agreed that the strip so taken contained 354 square feet and that it had a fair market value of $106.20.

One Bruce E. Kerney, whose qualification as an expert in real estate was conceded, testifying on behalf of petitioner, stated that the value of petitioner's land and the residence thereon prior to the taking was $6,500. This witness further testified that, in his opinion, the value of the property after the taking was $5,115.04 and that the amount of the depreciation in value resulting from the taking was $1,278.76. In reaching his decision, the trial justice combined the value of the land actually taken with the depreciation thus testified to and awarded the amount of $1,384.96. This witness further testified that the depreciated market value of petitioner's property after taking resulted from the loss of seclusion and privacy that followed the elimination of the private way and its replacement with a public road. The

respondent moved to strike the testimony relating to the loss of seclusion and privacy, and this motion was denied by the trial justice.

The respondent, as we understand him, argues that the loss of privacy resulting from an exercise of the power of eminent domain is not compensable as such and that even where a portion of a petitioner's land is taken, the destruction thereby of the secluded character of the remaining land may be considered in a determination of severance damages only in exceptional and peculiar circumstances. The petitioner, on the other hand, disclaims expressly that he is seeking damages for the loss of privacy per se. He argues that the taking of the strip along the easterly end of his lot for the purpose of constructing a public highway deprives the remaining land of its secluded character and that this loss of seclusion is a proper element to be considered in a determination of the severance damages to which he is entitled.

We are of the opinion, however, that the measure of damages to be applied in these cases of partial taking is the extent to which the fair market value of the remaining land has been depreciated as a result of the taking, and the prime issue with which we 'are confronted in this case is whether evidence of the loss of privacy or seclusion may properly be considered in a determination of the fair market value of the land remaining after the taking.

It is well settled that the measure of damages applicable in a case involving a partial taking is the value of the land taken at the time it is taken, together with any special or peculiar damages which result to the remaining land, or, to put it otherwise, the owner of such land is entitled to full compensation for such damages as he sustains by reason of the taking. *D'Angelo* v. *Director of Public Works,* 89 R. I. 267, 152 A.2d 211; *Greene* v. *State Board of Public Roads,* 50 R. I. 489, 149 Atl. 596. In *Taber* v. *New York, Providence & Boston R.R.,* 28 R. I. 269, 278, 67 Atl. 9, 13,

we said: "The authorities are agreed that where part of the tract is taken, just compensation includes not only the value of that which is taken, but damages, if any, to the remainder."

Such damages are to be ascertained by establishing the difference between the value of the land prior to the taking less its value after the taking. *Johnston* v. *Old Colony R.R.*, 18 R. I. 642, 29 Atl. 594; *Eljay Realty Co.* v. *Argraves,* 149 Conn. 203, 177 A.2d 677; *Rath* v. *Sanitary District Number One,* 156 Neb. 444, 56 N.W.2d 741. The rule that has general acceptance is aptly stated in *Department of Public Works and Buildings* v. *Bloomer,* 28 Ill.2d 267, 270, 191 N.E.2d 245, 248, as follows: "The settled measure of such recovery is the depreciation in value of the land not taken which results from the taking, that is, the difference between the fair cash market value of the part not taken unaffected by the improvement and its fair cash market value as affected."

Where, then, there has been a taking of a portion of an owner's land for the construction of a highway, which deprives the remaining land of the seclusion that existed prior to such taking, may such loss of seclusion be shown to establish a diminution in the fair market value of the land that remains after the taking? It is our opinion that evidence of such loss of seclusion is competent for the purpose of establishing a consequent diminution in the value of the land as a result of the partial taking, such diminution being properly included in the measure of damages in these cases. This is not to hold, however, that the loss of seclusion or privacy is itself compensable; we hold only that such loss of seclusion is relevant as evidence of the diminution in the market value of the remaining land after the taking.

The question of what are proper elements for consideration on the issue of depreciation of market value of the land remaining after a partial taking is discussed in *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authority,*

335 Mass. 189, 138 N.E.2d 769; *County Bd. of School Trustees* v. *Elliott,* 14 Ill.2d 440, 152 N.E.2d 873; *Dean* v. *State Road Dept.,* Fla., 165 So.2d 257; *Stoner* v. *Iowa State Highway Comm'n,* 227 Iowa 115, 287 N.W. 269; *Commonwealth of Kentucky, Department of Highways* v. *Curtis,* Ky., 385 S.W.2d 48; *0.089 of an Acre of Land in New Castle Hundred* v. *State,* 51 Del. 315, 145 A.2d 76; *Dennison* v. *State,* 48 Misc.2d 778, 265 N.Y.S.2d 671; *Monmouth Consol. Water Co.* v. *Blackburn,* 72 N.J.Super. 377, 178 A.2d 377. It is our opinion then that where there has been a partial taking that results in a loss of seclusion with respect to the remaining land, such loss of seclusion is an element that may be considered in establishing the amount of damages to which the owner is entitled and that no error inhered in the ruling of the trial justice denying respondent's motion to strike.

The respondent also argues that the destruction of the seclusion of the remaining land is not an element to be considered in determining the fair market value of the land after the taking if other properties in the neighborhood are similarly damaged. It appears to us that respondent is really arguing the well-settled rule that, where there has been no physical taking of any part of the owner's land, to be compensable the injury must be peculiar to such land and not such as is suffered in common with the general public. 4 Nichols, *Eminent Domain* (rev. 3d ed.), §14.1, p. 473. This authoritative text goes on to state that where there has been a physical taking of a part of a tract, it matters not that the damage is sustained in common with the general public.

The rule to which respondent refers is stated and qualified in *City of Crookston* v. *Erickson,* 244 Minn. 321, 325, 69 N.W.2d 909, 912. There the court stated:

"* * * Where no part of an owner's land is taken but, because of the taking and use of adjoining property, damage is caused to an owner's land, the damage is not

compensable unless the consequential injury is peculiar to the adjoining owner's property and not of a type suffered by the public as a whole. Locascio v. N. P. Ry. Co., 185 Minn. 281, 240 N.W. 661; Vacation of Part of Town of Hibbing, 163 Minn. 439, 204 N.W. 534, 205 N.W. 613; see, Feltz v. Central Nebraska Public Power & Irr. Dist. (8 Cir.) 124 F.(2d) 578. However, in cases where there is a partial taking, the injured owner is not required to show that the injury is peculiar to his remaining property. It is sufficient that the damage is shown to have been caused by the taking of part of his property even though it is damage of a type suffered by the public as a whole. State v. Rascoe, 181 Tenn. 43, 178 S.W.(2d) 392; see, Lamont v. West Penn Power Co., 300 Pa. 78, 84, 150 A. 155, 157 * * *."

The respondent also urges, as we understand him, that the evidence here is not sufficient to support the trial justice's finding that the taking of the strip along the private way depreciated the value of the remaining land by the destruction of the privacy thereof. We have examined the transcript and are unable to agree with the respondent and consider this argument as being without merit.

The appeal of the respondent is denied and dismissed, and the judgment appealed from is affirmed.

*Paul M. Chappell,* (for petitioner-appellee).

*Arthur N. Votolata, Jr.,* Special Counsel, *Alexander G. Teitz,* Assistant Counsel, (for respondent-appellant).