[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on plaintiff's petition for assessment of damages pursuant to Rhode Island General Laws
1956 (1984 Reenactment) § 37-6-18. This case involves the amount of severance damages Nelmor Realty Corporation ("plaintiff") is entitled to as a result of the State of Rhode Island's ("State") condemnation of portions of two separate lots owned by the plaintiff. The condemnation procedures utilized by the State complied, in all respects, with the applicable Rhode Island law.
The parties have stipulated that the taking occurred on August 23, 1984 and the parcels affected were Lots 57 and 58 on Department of Transportation Right of Way Plan #1990. The legal description of the land is Lots 227 and 407 on Assessor's Plat 307 located on Warwick Avenue in Warwick, Rhode Island. Both sides have stipulated that their real estate witnesses, Joseph Capaldi and William McGovern, are experts for the purposes of appraisal. The parties further stipulate to the value of the land acquired and the value of the easements for the parcels. The lots, assessed at $5.61/square foot ("SF") are valued as follows:
 Lot 57 Lot 58
 Value of Land Acquired $14,670.15 $7,433.25
 Value of Easements (Permanent 973.53 1,630.94
 and Temporary) __________ _________
 TOTAL $15,643.68 $9,064.19

The only issue before this Court is whether or not plaintiff is entitled to severance or consequential damages and, if so, in what dollar amount.
Rhode Island case law provides the well-settled rule regarding assessment of damages. Where there is a partial taking by eminent domain, the measure of damages is the value of the land actually taken plus the difference between the value of the remainder before the taking and the value of the remainder after the taking. Hetland v. Capaldi, 240 A.2d 155, 157 (R.I. 1968). Plaintiff's damages will be assessed using that method.
This Court, sitting without a jury, heard evidence on the issue of damages. Steven Sholes testified for the plaintiff regarding the loss of eight parking spaces on Lot 58 and loss of twenty-three parking spaces on Lot 57. Joseph Capaldi, plaintiff's real estate expert, testified that prior to the taking Lot 57, after analyzing and adjusting three comparables, was valued at $1,870,000.[1] (Plaintiff's Exh. 13 at 21). Using the same procedure of adjusting comparables, Mr. Capaldi valued the post-taking price of Lot 57 at $1,725,000.[2] (Plaintiff's Exh. 13 at 29). Mr. Capaldi then subtracted the two figures and arrived at an amount of $145,000 in severance damages.[3]
(Plaintiff's Exh. 13 at 31). Mr. Capaldi used the same method of valuation for Lot 58. He determined the pre-taking value of Lot 58 to be $2,050,000 and the post-taking value to be $1,900,000.[4] (Plaintiff's Exh. 14 at 23, 31). Again by finding the difference between the pre and post-taking values Mr. Capaldi arrived at severance damages in the amount of $150,000.[5] (Plaintiff's Exh. 14 at 30).
On cross-examination, Mr. Capaldi conceded that he has no formal training in "parking engineering" and that use of a traffic engineer would have helped. Moreover, Mr. Capaldi's figures were based on the testimony of Steven Sholes and the documents submitted by him. Cross examination revealed several inconsistencies between his testimony and the reports.
The State presented its expert, William McGovern, who testified that the pre-taking value of Lot 57, after making adjustments to three comparables, was $1,100,000.[6]
(Defendant's Exh. B at 12). He testified the post-taking value of the same lot to be the same because "the subsequent impact on the remainder is not measurable in the market." (Defendant's Exh. B at 20). Mr. McGovern, utilizing the same assessment method as Lot 57, valued the pre-taking amount of Lot 58 to be $1,200,000.[7]
(Defendant's Exh. C at 12). For the same reasons as he opined regarding Lot 57, Mr. McGovern determined the post-taking value of Lot 58 to be the same as the pre-taking value. (Defendant's Exh. C at 20). Mr. McGovern also testified to a parking ratio survey he conducted which showed no recognizable parking pattern in the vicinity of Lots 57 and 58. (Defendant's Exh. D). He concluded that a prudent buyer in the market would not find detrimental a particular parking scheme nor would the buyer notice a reduction in the setback. Therefore, Mr. McGovern opined, that the plaintiff is entitled to no severance damages in this case.
Based on the evidence presented at trial, including some inconsistent and erroneous testimony from Mr. Capaldi, this Court finds Mr. Capaldi was less persuasive than Mr. McGovern. Accordingly, this Court rejects the testimony of Mr. Capaldi and finds the testimony and determinations made by Mr. McGovern to be credible. This Court further finds that although the plaintiffs lost several parking spaces and some setback footage, the amount of damages sustained by the plaintiff is zero because it is not measurable in the market. The Court also finds, based on Mr. McGovern's testimony and report, that a prudent buyer would not be affected by the loss of parking or setback footage.
For the reasons hereinabove set out, the Court finds the plaintiffs have suffered no measurable damages and are entitled to no severance damages.
[1] 28,768 SF x $65/SF = $1,869,920 = $1,870,000 (R)
[2] 28, 768 SF x $60/SF = $1,726,080 = $1,725,000 (R)
[3] $1,870,000 — $1,725,000 = $145,000
[4] Pre-taking value 29,234 SF x $70/SF = $2,046,380 = $2,050,000 (R) Post-taking value 29,234 SF x $65/SF = $1,900,210 = $1,900,000 (R)
[5] $2,050,000 — $1,900,000 = $150,000
[6] 27,332 SFBA x $40/SF = $1,093,280 = $1,100,000 (R)
[7] 29,766 SFBA x $40/SF = $1,191,040 = $1,200,000 (R)